**EXHIBIT A**

Vanguard Int'l Cinema Homevideo Distribution Contract for:

# "THE PICTURES"

AGREEMENT made this 7th Day of May 2001, by and between Vanguard International Cinema, a California corporation (hereinafter referred to as "Distributor"), located at 15061 Springdale Street #109 Huntington Beach CA 92649 and Global Asylum, Inc. (hereinafter referred to as the "Licensor"), located at 6671 Sunset Blvd. Building 1593, Hollywood CA 90028.

WHEREAS, Licensor has the rights or is negotiating to acquire the rights to the motion pictures listed in Schedule B (hereinafter collectively referred to as "the Pictures"); and desires to grant Distributor the exclusive right to distribute the Pictures; WHEREAS, Distributor is in the business of distributing motion pictures; and THEREFORE, in consideration the mutual promises and covenants contained herein, the parties agree as follows:

1. **GRANT OF RIGHTS.** Licensor hereby grants to Distributor the sole and exclusive right to sell, rent, lease, license, distribute, exhibit, exploit, and otherwise market the Pictures to all homevideo markets in the United States and Canada for five years forward from the date set forth above. Distributor shall use its best efforts, consistent with good business practice, to distribute and exploit the Pictures in accordance with its rights under this agreement. "Homevideo markets" shall include the sale or rental of videocassettes, dvd, laserdisk and any other electronic and digital delivery devices, primarily intended for private home use.

2. **DELIVERY.** Licensor shall deliver to the Distributor, or his designee, within 30 days from the date of Licensor's agreement with each producer, a digibeta video master, a selection of black-and-white/and color stills or negatives, and such advertising and promotional material including samples of reviews, posters, fliers, color photos and press and production material as Licensor may have or aquire in connection with the Pictures.

3. **DIVISION OF PROCEEDS.** The term "Gross Receipts" shall be defined as all monies actually received by or credited to Distributor or any entity controlled by distributor from the sale or distribution of the Pictures. Actual out of pocked expenses are not to exceed the expenses detailed and attached hereto as Exhibit "A" and made part hereof, in the amount of $ 20,000.00 US combined for the videocassette and dvd releases, including all production and authoring costs but with the exception of reduplication expenses incurred in the case of sale exceeding projections as provided in Schedule A enclosed herein. Licensor shall pre-approve such additional expenses by proof of purchases

-1-

exceeding projections prior to such expenses being agreed to by distributor.

A. For titles listed in Table 1 of Schedule B enclosed herein, Licensor shall receive 30% of all home video Gross Receipts for the Pictures after deduction of actual, verified and detailed expenses spent directly on the Picture per Schedule A enclosed herein. Distributor agrees to incur the expenses which shall be recoupable solely from Initial Gross Receipts.

B. For titles listed in Table 2 of Schedule B enclosed herein, Licensor shall receive 30% of all home video gross receipts for the Pictures without any deductions for expenses related to the release of the Pictures. Any and all such expenses shall be covered solely by Distributor.

The amounts payable to the Licensor by the Distributor are solely the monetary obligations of a debtor to a creditor. The Gross Receipts from the Pictures need not and will not be segregated but be treated in Distributor's ordinary course of business. Gross Receipts shall nevertheless be accounted for separately and distinctly.

Advance royalties shall be paid in the amount indicated for each title as listed in Schedule B Table 1 and Table 2 enclosed herein and shall be deducted from initial royalties owed Licensor from the sale of The Pictures. The advance royalties shall be due and payable no later than the street date of each title but in no event later than three (3) months from delivery of digibeta video master and art, press and production materials.

4. NO CROSS-COLLATERALIZATION. There shall be no cross-collateralization between any two or more Pictures party to this agreement and co-signed as The Pictures hereunder and itemized in Schedule B enclosed herein. There shall further be no cross-collateralizations between The Pictures and any other motion pictures Distributor has or may have in release in conjunction with The Pictures. Each Picture party to Schedule B shall be independently accounted for in accordance with paragraph 8 herein.

5. CREDITS. At the time of delivery of each Picture, Licensor shall deliver a statement setting forth the names of all individuals to whom Licensor is obligated to accord credit on or in any paid advertising, printed promotional material, publicity or exploitation of the Picture, specifying the credit they are entitled to receive and including excerpts from any agreements describing the form and nature of the form and nature of such required credit. Distributor shall be entitled to rely entirely upon Licensors's statement, and if because of any improper or insufficient information contained in the Licensor's statement, an

individual shall bring any claim, action, or proceeding against Distributor, Distributor may defend, or elect to have Licensor defend, such claim, action or proceeding. Both parties shall colaborate in good faith to defend any such claim.

  a. Picture shall not be coupled with any other picture and shall not be cut or altered in any way shape or form. Licensor's logos representing Lisencor shall be at head of program and its logo shall appear on box.

### 6. REPRESENTATIONS and WARRANTIES.
Licensor hereby warrants and represents that it has distribution rights to the Picture, and any parts therein, and that it has not been responsible for any act which has resulted or may result in the impairment of such rights, nor will it do so during the term of this Agreement.

  a. Licensor also warrants and represents that it has the full and exclusive right, power and authority to enter into and perform this Agreement, and all rights granted herein are and will be free and clear of liens, encumbrances, or claims of every kind, and all royalty and license fees required now or in the future to be paid in connection therewith will be paid by the Licensor.

  b. Licensor also warrants and represents that neither the Picture nor the exercise of any of the rights granted to Distributor in this Agreement shall violate the right of any third party.

### 7. INDEMNIFICATION.
Licensor shall indemnify Distributor, its assignees and licensees and hereby agrees to pay any loss, damage, expense, settlement or judgment, including reasonable attorney's fees and court costs, that Distributor may incur by reason of the breach of any representation or warranty contained in this agreement.

  a. Distributor shall indemnify Licensor and producers, and hereby agrees to pay any loss, damage, expense, settlement or judgment, including reasonable attorney's fees and court costs, that Licensor may incur by reason of omission of Distributor in connection to the exercise of any of its rights hereunder.

### 8. ACCOUNTINGS.
Distributor shall, within 30 days of the end of each calendar quarter, supply Licensor with an accounting statement, along with monies due Licensor, reflecting in reasonable detail the Gross Receipts collected by Distributor including paid (closed) invoices and unpaid (open) and any expenses deducted therefrom. Distributor shall keep accurate books and records in connection with the Picture, and Licensor shall have, not more than twice annually the right upon seven business days' notice to Distributor, to inspect and make copies of

relevant portions of Distributor's books during regular business hours as such books relate to the Picture. Licensor reserves the right to request an audit of the books and records referred to above. For any audit that result in exposing an error of 5% or more due Licensor, Distributor shall pay audit's costs.

9. END OF CONTRACT. Except in the event of early termination of the Agreement due to a breach by distributor, Distributor shall have the right upon termination of this agreement, to sell off overstock inventory for a period of ninety days after date of termination of contract. After the ninety day sell-off period Licensor has the option but not obligation to buy remaining inventory at cost. Should licensor opt not to purchase remaining inventory Distributor shall destroy remaining inventory within 30 days and provide Licensor with notarized proof thereof. Distributor has the obligation to remit all monies to the Licensor for all Gross Receipts.

10. TERMINATION. The licensor has the right to terminate this agreement, in writing, if Distributor should default on any part hereunder. Distributor shall have thirty days to respond to a written claim of default. The Distributor shall be in default hereunder:

a) If Distributor materially breaches any representation or warranty made hereunder and such breach is not cured within thirty (30) days after receipt of written notice from Licensor.

b) If it fails to pay any monies due to the Licensor within a period of thirty (30) days after receipt of written notice from Licensor specifying that any such monies shall have become due hereunder.

c) If a petition in bankruptcy or for reorganization is filed by or against Distributor under any bankruptcy act now or hereafter in force; or makes an assignment for the benefit of creditors, and/or if Distributor stops operations altogether.

d) If Distributor does not release the video within ninety (90) days from the scheduled release date as per Schedule B herein.

e) If Distributor breaches or defaults in the performance of any material provision hereof, or agreement contained herein, on its part to be performed, and fails to remedy the same within a period of thirty (30) days after receipt of written notice from Licensor specifying such default.

11. REMEDIES UPON DEFAULT. Upon the occurence of any event of default herein, the non-defaulting party shall, in writing, give notice of the terms and conditions upon which the other party, the defaulting party, shall be in default hereof and the defaulting party shall have thirty (30) days from the date of receipt of such notice to cure or otherwise rectify such default or violation and comply with this Agreement. Failure by the defaulting party to cure any default and otherwise comply in full with the terms of this Agreement within thirty (30) days from the

-14-

date of any such notice shall constitute a "Terminating Event" in which case, the non-defaulting party may, in its sole and absolute discretion, terminate this Agreement and/or bring an action for damages.

12. ASSIGNMENT. Neither party hereto will not assign this agreement in whole or in part without the expressed written permission of the other party.

13. CONSULTATION. Distributor agrees to the best of its ability to consult with Licensor on advertising campaign and design of packaging, sellsheets and other promotional materials, utilizing Licensors experience in marketing Picture as well as materials supplied by Licensors.

14. MISCELLANEOUS. Nothing contained in this Agreement shall constitute a partnership or joint venture by the parties hereto or constitute either party as the agent of the other. No waiver by either party of a breach of this Agreement shall be deemed a waiver of a succeeding or preceding breach. Any notice given by either party under this Agreement shall be made in writing and given to the other party or mailed by registered mail addressed to the party at the address stated above. This Agreement shall be interpreted and construed in accordance with the laws of the State of California applicable to agreements made and entirely performed therein. This Agreement contains the full and complete understanding between the parties, and supersedes all prior written and oral Agreements and understandings, if any, and cannot be modified or amended except by a written instrument executed by both parties.

14. ARBITRATION. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by mandatory arbitration administered by the American Film Market Association in Los Angeles in accordance with its applicable rules, or another arbitrator mutually agreed upon by both parties, and shall not have worked for either party in any capacity prior. The prevailing party shall be entitled to reimbursement for costs and reasonable attourney's fees. The determination of the arbitrator in such proceedings shall be final, binding and non-appealable.

15. FREE MATERIALS. Licensor is to receive 25 free vhs copies and 25 free dvd copies of each Picture in packaging as well as 50 sellsheets in printed form. Licensor is also to receive electronic file of artwork pertaining to the Picture, on loan, as it is copyrighted to Distributor, and can use it for own promotion unchanged in Distributors design formats. Licensor shall also have access to all art created by Distributor and the right to use such art for promotion of the film in other markets than domestic home video vhs and dvd. At the end of contract term, Licensor shall further, with Distributor's coordination, be able to purchase



the DLT dvd replication masters for The Pictures listed under Table 2 of Schedule B herein and receive DLT dvd replication masters for The Pictures listed under Table 1 of Schedule B herein at no cost to Licensor. In such a situation Licensor shall carry all costs associated with replication, cloning, packaging and delivery of Picture in territories not concurrently held by Distributor.

16. RELEASE SCHEDULE. Distributor commits to releasing The Pictures in accordance with release Schedule C enclosed herein and agreed to by both parties.

agreement regarding distribution rights for;

## "The Pictures"

IN WITNESS THEREOF, the parties have executed this Agreement as of the date set forth above.

DISTRIBUTOR:

by: Freyr Thor
its: President

LICENSOR:

by: David Rimawi
its: Chairman

# SCHEDULE E

February 4th 2003

## Addendum to contract between Global Asylum & Vanguard Cinema

THE FOLLOWING TITLES SHALL BE ADDED TO "THE PICTURES" EXCLUSIVE GRANTS OF RIGHTS AGREEMENT IN ACCORDANCE WITH MASTER CONTRACT SIGNED BY LICENSOR (Global Asylum, Inc.) AND DISTRIBUTOR (Vanguard International Cinema, Inc.) AND DATED 7th DAY OF MAY 2001 AND SHALL BE EFFECTIVE FOR FIVE YEARS FROM THE DATE OF RELEASE. GRANT OF RIGHTS TO THE TITLES MENTIONED HEREUNDER SHALL ADHERE TO AND BE DEFINED IN ACCORDANCE WITH PARAGRAPH 1. "GRANT OF RIGHTS" OF AFOREMENTIONED MASTER CONTRACT AND FURTHER CONFORM TO PARAGRAPH 3. "DIVISION OF PROCEEDS" REGARDING ESTABLISHED ROYALTY PAYMENT FORMULATION BASED ON SELLTHRU DEFINITION OF 30% GROSS ROYALTY EXCLUSIVELY FOR EACH AND ALL PICTURES INCLUDED HEREIN. THIS ADDENDUM SHALL ADDITIONALLY BE SUBJECT TO PARAGRAPH 3A OF LICENSOR'S AND DISTRIBUTOR'S X ENTERTAINMENT CONTRACT DATED SEPTEMBER 10th 2002. OTHERWISE THE TITLES HEREUNDER SHALL BE COMPLETELY SUBJECT TO MASTER CONTRACT DATED 7th DAY OF MAY 2001 IN PART AND IN WHOLE REGARDING ALL RESPONSIBILITIES AND ALL LIABILITIES OF LICENSOR TO DISTRIBUTOR AND DISTRIBUTOR TO LICENSOR AS DETAILED IN PARAGRAPHS 1 THRU 16 OF MASTER CONTRACT.

| Title | Release | Format | MG |
|---|---|---|---|
| Heater | Rental | vhs/dvd | $3k |
| Earth & Water | Rental | vhs/dvd | $2k |
| All The Wrong Places | Sellthru | vhs/dvd | $0k |
| Ghost of a Chance | Rental | vhs/dvd | $2k |
| Theory of The Leisure Class | Sellthru | vhs/dvd | $0k |
| Maslin Beach | Sellthru | vhs/dvd | $1.5k |
| Another Planet | Sellthru | vhs/dvd | $1.5k |

David Rimawi
President
The Global Asylum

Freyr Thor
CEO
Vanguard Cinema